IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : CASE NO. 1:10 CR 0025 |
| Plaintiff, | : |
| -vs- | : MEMORANDUM OF OPINION AND<br>: ORDER DENYING DEFENDANT'S<br>: MOTION TO SUPPRESS |
| CLEOPHAS L. DAVIS, | : |
| Defendant. | : |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

    Before the Court is defendant Cleophas Davis' ("Mr. Davis") motion to suppress evidence seized from his person when the police conducted a traffic stop of the automobile in which he was traveling as a passenger.  (Doc. 12).  Pursuant to the standards laid down in Terry v. Ohio, 392 U.S. 1 (1968) and Illinois v. Wardlow, 528 U.S. 119, 123 (2000), Mr. Davis contends the officers lacked the necessary probable cause or reasonable suspicion to stop the vehicle and seize the handgun the Defendant admitted having on his person.  Mr. Davis submits that his mother, Jacqueline Davis ("Ms. Davis"), the driver of the automobile, did not commit the alleged traffic infractions and, further, maintains the traffic stop was "merely pretext" for the officers to submit the Defendant and his mother to an unreasonable investigative search.

    In its response in opposition, the government maintains the officers possessed both probable cause and reasonable suspicion to stop the automobile driven by Ms. Davis in response to the traffic infractions they witnessed her commit.  Relying upon the

decisions in Whren v. United States, 517 U.S. 806 (1996) and United States v. Street, 614 F.3d 228 (6th Cir. 2010), the government maintains the officers' actions were reasonable in light of the traffic offense regardless of the officers' subjective intent. (Doc. 13).

An evidentiary hearing was held on 17 February 2011, with counsel and Defendant present. The Court heard testimony from Cleveland Police officers, Detective Teresa Volk ("Officer Volk"), called by the government, and from Sergeant Kevin Kelly ("Officer Kelly"), and Ms. Davis, called by the Defendant. Each testified to his or her assessment of the events surrounding the stop and subsequent arrest of Mr. Davis on 30 December 2009. (Suppression Hearing Transcript ("TR"), pp. 1-112).

Based upon the evidence adduced at the hearing, the briefs before the Court, and the relevant law, this Court will deny the Defendant's motion to suppress.

## I. FACTUAL BACKGROUND

The Court has gleaned the following facts from the evidence submitted. Neither party contests the fact that Mr. Davis was a passenger in a car driven by his mother at 1:50 p.m. on 30 December 2009. Nor do the parties contest that Officers Kelly and Volk stopped the Davis' white Lincoln Continental while it was traveling south on West 105th Street in Cleveland, Ohio. (TR 9). Officer Volk testified that she approached the stopped Lincoln on the passenger side while Officer Kelly approached on the driver's side, where he asked Ms. Davis for her driver's license and registration. (TR 12-14). Officer Volk further testified that she asked the Defendant his name and that, when he identified himself as Cleophas Davis, Officer Kelly, recognizing the Defendant's name

2

from a past narcotics arrest, came around the vehicle to the passenger side and asked Mr. Davis whether he "had anything on him." (TR. 14,15). It is uncontested that Mr. Davis responded that he had a gun in his back pocket. (TR 15). At that point, according to Officer Volk, Mr. Davis was removed from the car, handcuffed, and the revolver was removed from his rear pants pocket. Officer Volk's uncontested testimony indicated that Mr. Davis received his Miranda rights and told Officer Kelly that he had found the gun "on the street." (TR 15).

Officer Volk testified that while Ms. Davis was driving with a suspended license and had committed a traffic infraction, she was not issued a citation because "she was cooperative." (TR 16). Officer Volk indicated that Officer Kelly received permission from Ms. Davis to perform, that day, a consent search of her residence because the Officers "had information that narcotics were being sold from that residence." (TR 16). Officer Volk confirmed, under cross-examination, that Ms. Davis' residence was under vice-squad surveillance for drug activity earlier on the day of the traffic stop, (TR 20, 21). She testified, however, that the Officers did not know the specific residence under surveillance belonged to Ms. Davis until the time of the traffic stop. (TR 32-34). Officer Kelly testified that he had unverified information that Mr. Davis was selling drugs on West 106th Street out of the residence the officers were surveilling earlier in the day (TR 49-50), and that Mr. Davis was using a black and pink car out of which to deal drugs. (TR 50).

As for Ms. Davis' traffic infraction, Officer Volk testified that while she and Officer Kelly were traveling northbound on West 105th Street, they observed a white Lincoln Continental, traveling southbound on West 105th, both change lanes without signaling

3

and cross the double yellow line of the four-lane thoroughfare and almost strike an oncoming vehicle traveling ahead of the unmarked Crown Victoria driven by the officers. (TR 9, 10). Officer Volk testified she and Officer Kelly turned their car around and followed the Lincoln southbound on West 105th, activating their siren and emergency lights near West 117th Street to effectuate a stop of the vehicle. Officer Kelly corroborated Officer Volk's testimony regarding the nature of the traffic infraction, the position of the Officers' vehicle, the approach of the Officers toward the Lincoln once stopped, and the nature of the exchange between Mr. Davis and Officer Kelly. (TR 60, 62, 63, 64). Officer Kelly noted that he could not recall whether the initial conversation between himself and Mr. Davis occurred through an open passenger door or an open passenger window, but that Mr. Davis was still in the car when the initial exchange occurred in which the Defendant admitted to having a handgun on his person in response to Officer Kelly's inquiry. (TR 65-66).

Contrary to the testimony of Officers Volk and Kelly, Ms. Davis recalled that the Crown Victoria carrying the officers was parked on West 106th Street facing the intersection of West 105th Street as it turns into Bellaire Road. (TR 74).[1] She testified that when she drove past the intersection the Crown Victoria pulled out and followed her until the officers pulled her over just short of West 117th Street. (Tr 74-77). Ms. Davis indicated that she could not recall the exact nature of the exchange between the officers

---

[1]The Court notes that Ms. Davis' testimony was punctuated by a marked and pervasive difficulty in hearing the carefully enunciated questions placed before her from both counsel. (TR passim). Once Ms. Davis actually heard a question put to her she was responsive. Ms. Davis' hearing difficulties raises the issue of what she may have been able to hear, conversationally, during the traffic stop.

and her son. (TR 79-80). Ms. Davis did testify that the officers did not ask her for any identification or tell her why she was being pulled over but, instead, both officers went to the passenger side of the vehicle to talk to her son. (TR 76-77). Ms. Davis testified that she did not commit any of the alleged traffic infractions, including changing lanes without signaling, crossing over a double yellow line, or nearly striking an oncoming vehicle. (TR 82-83).

Ms. Davis further testified that, earlier the same day, her niece was pulled over by the police after the niece left Ms. Davis' residence. Both officers testified they had no personal knowledge of the traffic stop involving Ms. Davis' niece.

## **II. LAW AND ANALYSIS**

The Fourth Amendment ensures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This protection extends to shield the individual from unreasonable arrests and searches by requiring the executed actions rely on probable cause. Draper v. United States, 358 U.S. 307 (1959). Our judiciary recognizes, as well established, a defendant's right to urge the suppression of evidence obtained in violation of the Fourth Amendment if the defendant demonstrates an absence of probable cause or reasonable suspicion for the search and seizure. Aldeman v. United States, 394 U.S. 165 (1969); Rakas v. Illinois, 439 U.S. 128 (1978).

The question of whether an officer has reasonable grounds to "stop" and "frisk" falls directly within the Fourth Amendment's proscription against unreasonable searches and seizures. Terry v. Ohio, 392 U.S. 1, 16 (1968). Police officers are permitted to

5

conduct stops based on reasonable suspicion that criminal activity is afoot and to frisk the detained citizen if they have a reasonable belief the person is armed. Terry, 392 U.S. at 30.

Fourth Amendment rights are personal rights and may not be asserted vicariously. See United States v. Myers, 102 F.3d 227, 231 (6th Cir. 1996). The Fourth Amendment protects interests that include the "freedom of movement and insulation from the fear and anxiety produced by unlawful seizure. In the traffic stop scenario, these interests are personal to all occupants of the vehicle that is detained." United States v. Richardson, 385 F.3d 625, 629 (6th Cir. 2004).

A passenger traveling in a stopped vehicle has standing to challenge the legitimacy of the stop, as a seizure of his or her person, yet lacks standing to challenge the search of a vehicle belonging to another or any items found on other passengers, or driver. See United States v. Carter, 14 F.3d 1155; United States v. Decker, 19 F.3d 287, 288 (6th Cir. 1994).

Pursuant to Terry v. Ohio, 392 U.S. 1 (1968), the police may carry out an investigative stop based upon reasonable suspicion the individual is engaged in criminal activity. Courts have enunciated the posture of that power to perform an investigative stop as "brief" to determine "identity or to maintain the status quo momentarily while obtaining more information." Adams v. Williams, 407 U.S. 143, 145-46 (1972). Courts have recognized that officers "may ask the detainee a moderate number of questions to determine his [or her] identity and to try to obtain information confirming or dispelling the officer's suspicions." Berkemer v. McCarty, 468 U.S. 420, 439 (1984).

The Court expounded on Terry in United States v. Cortez, 449 U.S. 411, 417-418 (1981), stating,

> [a]n investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity ... the totality of the circumstances--the whole picture--must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

Courts have long held that a law enforcement officer lacking probable cause sufficient to justify an arrest may briefly detain an individual for investigative purposes without violating the Fourth Amendment if the officer possesses a "reasonable suspicion that [the defendant] was engaged in wrongdoing when [the officer] encountered him [or her]." U.S. v. Sokolow, 490 U.S. 1, 7 (1989). See also United States v. Lopez-Arias, 344 F.3d 623, 627 (6th Cir. 2003) (holding that "courts have recognized that a law enforcement officer who lacks probable cause to justify an arrest may nevertheless briefly detain an individual without violating the Fourth Amendment if the officer possesses a reasonable and articulable suspicion that the individual has committed a crime"). A finding of reasonable suspicion may "arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990).

In this instance, Mr. Davis denies his mother committed any traffic violations and, instead, maintains that the traffic stop was "mere pretext" for the officer's actual interest in investigating him for drug trafficking. Mr. Davis points to surveillance activity earlier in the day in which the vice-squad acted on information that drug transactions were being

7

carried on in a residence on West 106th Street, a residence that turned out to belong to Ms. Davis.

In this narrow inquiry, the Court turns to the Defendant's allegations that pretext fueled the traffic stop, and that the stop was illegitimate because the traffic infractions did not occur.  As to pretext, the United States Supreme Court has clarified that the "constitutional reasonableness of traffic stops" does not depend "on the actual motivations of the individual officers involved."  Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); see also United States v. Herbin, 343 F.3d 807 (6th Cir.2003) (holding that officers had probable cause to effect a traffic stop of motor vehicle in which defendant was a passenger, after officers observed vehicle run a red light and cross the center line of the roadway, regardless of officers' subjective intent to investigate vehicle occupants for drug activity);  United States v. Townsend, 305 F.3d 537, 541 (6th Cir.2002) ("A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer's true motive is to detect more extensive criminal conduct.").  As this Circuit noted in United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993) (en banc):

> We focus not on whether a reasonable officer "would" have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop.

8

Even if the subjective intent of Officers Volk and Kelly was to investigate Mr. Davis and his mother for drug activity, the officers did not run afoul of the Fourth Amendment when they stopped the vehicle so long as they observed a traffic violation take place.[2]

Having considered the briefs, the law, and the testimonies of Ms. Davis, and Officers Volk and Kelly, the Court finds the officers legitimately stopped the Lincoln Continental driven by Ms. Davis. When law enforcement officers witness a traffic violation, they may stop the driver and her car. The warrant requirement generally does not apply to transient items, such as a car. "Before a warrant could be secured the automobile would be beyond the reach of the officer." Carroll v. United States, 267 U.S. 132, 146, 45 S.Ct. 280, 69 L.Ed. 543 (1925); see Almeida-Sanchez v. United States, 413 U.S. 266, 269, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). And there is nothing "unreasonable" about stopping a vehicle whose driver has just committed a traffic violation. See Whren v. United States, 517 U.S. at 810.

The Court finds the testimonies of Officers Volk and Kelly consistent one with the other, and more credible than Ms. Davis' bald denials that she did not commit any traffic infractions. The Court further notes that Ms. Davis was operating the Lincoln Continental under a license suspended due to a previous accident. Accordingly, in this instance, the Court concludes Officers Kelly and Volk witnessed Ms. Davis change lanes without signaling and cross the double yellow line nearly striking oncoming traffic.

---

[2]Credible testimony from both officers confirmed that neither knew Mr. Davis and his mother were the occupants of the Lincoln Continental prior to their face-to-face inquiry. However, whether the officers knew the occupants of the vehicle does not, after Whren, merit consideration. See 517 U.S. at 813, 116 S.Ct. 1769. The inquiry now turns on whether the objective reality provided probable cause for the officers to believe that, in this instance, a traffic violation, had occurred.

While this traffic violation is a minor misdemeanor, see Ohio Revised Code §§ 4511.30, 4511.33 & 4511.39, that does not divest the police of authority to stop the car. See Pennsylvania v. Mimms, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (approving of stop to issue traffic summons for expired license plate).

As a result, the Court will not suppress Mr. Davis' uncontested admission, in response to Officer Kelly's limited investigative question, that he was carrying a firearm on his person. Nor does the Court find Constitutional merit to suppressing the evidence of the handgun subsequently seized from Mr. Davis' person.

### III. CONCLUSION

For the reasons discussed above, this Court denies Mr. Davis' motion to suppress the evidence seized pursuant to a search of his person after the traffic stop of the vehicle in which he was a passenger.

IT IS SO ORDERED.

    /s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 7 April 2011